Wright, J.,
delivered the opinion of the court:
The policy insures six thousand dollars, agreed value, upon one-half the steamboat Trenton, from twelve o’clock at noon, on October 11, 1830, until noon on May 11, 1831, to navigate the usual western waters, exclusive of the lead trade, with privilege, during the time, to proceed, touch, and stay at any ports or places, if thereunto obliged, by stress of weather or other unavoidable accidents, or for the purpose of receiving or discharging freight or passengers, or to take in wood, without prejudice to the assurance. It was also agreed, in the policy, that the insurer should not be liable for any partial loss, nor for any *general or particular [73 average, unless the loss or average shall amount to ten per cent, on the value.
It is obj'eeted to the item for the wages of the crew, while on the rocks, that it is not chargeable under this policy. The assurance here is on the body of the boat, for a specified time, and is like that in Perry v. Ohio Insurance Co., 5 Ohio, 306. In that case, this court held that “the ordinary wages of the crew and their subsistence are only the common expenses of the boat, and are neither increased nor diminished by the accident insured against.” It is “ charge resting on the assured at any rate. The claim is, not that their pay and subsistence was extraordinary, resulting from the accident, but that their labor was not as productive of profit to their employer as it otherwise would have been.” The boat, in this policy, is privileged to navigate the western waters, etc., for seven months; but the insurers nowhere stipulate that she shall be so employed, or that they will make good any loss of wages while she remains idle. If, in case of accident, the crew be retained under their original engagement, their wages are not an extraordinary expense, and as the crew were not employed, in consequence of the accident, their wages *76 and subsistence did not result from it, and can not, in our opinion, be chargeable upon the insurer. This item, therefore, will be deducted from the verdict.
The defendants claim that the item for repairs at Pittsburg: must be rejected, upon the ground that the boat was bound to-New Orleans, at the time of the accident, and the repairs were not made until after she changed her destination, and had made several trips from Louisville to Pittsburg. That the removal of her from Louisville, when partially repaired, was allowable, only because it was necessary to remove her for the purpose of completing the repairs; and if it was necessary to remove the boat from Louisville, that the assured were bound to complete the-repair at the first convenient port. If, it is contended, the condition of the boat was such as to render her seaworthy when she left Louisville, after the partial repair, she was bound to resume her voyage to New Orleans, and the breaking up the voyage, without abandoning to the underwriters, exonerates them; and if, on the contrary, the boat was unseaworthy, from the time of her rescue from imminent peril until she was completely repaired at Pittsburg, and that was the proper port for, repair, the policy terminated, and the liability of the underwriter was at an end, 74] the moment she left the latter place *without repair, as the law holds the assured to a continued warranty oí the seaworthiness of the boat. However forcible this reasoning might be, if the assured were attempting to recover for an injury to the boat after she ceased to be seaworthy, we do not recognize its force or application in the case actually before us. And as to the allegation of the boat’s making several trips between the time she left Louisville and her complete repair, the answer is: 1. The fact forms no part of the case before us; 2. If it did, the insurance is upon time, and not upon any particular voyage.
It is further objected to the item for repairs at Pittsburg, that it does not amount to ten per cent, upon the sum insured, and can not be added to the repair at Louisville, in order to make that amount. In Brooks v. Oriental Insurance Company, in the Supreme Court of Massachusetts, 7 Pick. 268, it was held that “the master had a right to exercise a sound discretion upon that matter, and that the defendants are liable for the expenses of the temporary repair, etc., which are to bo added to the complete repairs, etc., which sums, together, are to be considered the- *77 ■expenses of repairing the damages.” This rule is obviously just. 'The real question is, what was the expense of repairing the injury? A boat is so crippled at Louisville, that she can not move at all •without some slight repair, but the expense of repairing there is much greater than at Cincinnati — is the master bound, or would he act in good faith to the underwriters, if he made the whole repair at the most expensive place, instead of only doing there what was necessary to enable him to run thd boat to one less expensive for a thorough repair ? It is true all these things require the exercise of good faith ; and we think it equally true that the want of it can only be urged to the jury, which is the proper ■tribunal to determine that question.
It is further contended for the defendant, that as jettison and general average are both specially insured against, when amounting to ten per cent, after the valuation, or six hundred dollars, the claims arising under these heads must be analyzed to find if the damage from each amounts to ten per cent.; and, therefore, that inasmuch as neither one-half of the average found for salvage, nor one-half' of that found for jettison, amounts to ten per cent., both those items are to be excluded ■from the verdict. To establish the justice of the point contended for, counsel supposed the case of ua vessel injured in her hull, ■the subject primarily insured, to a very small amount; but a jettison has occurred, which compels a contributionand insist -^that “if the trifling injury to the ship can be tacked to the [75 jettison, the most flagrant injustice would follow.” The flagrant injustice of the hypothetical case arises from the circumstance that the argument loses sight of the object of the jettison, which is the safety of the ship, and the liability of the assurer to contribute to the jettison in proportion to his interest, is alone what exonerates him from responsibility for a total loss. The insurer can not be permitted to complain of an injustice which relieves him from paying a greater sum, by holding him liable to a less. But counsel is mistaken in the assumption- that jettison or general average are especially insured against in this policy. In terms, it assures the boat for seven months to navigate the usual western waters. Jettison is nowhere named in the policy; and general average is only alluded to in the clause which authorizes the assured, their factors, servants, and assigns, to labor, in case of loss or misfortune, for the safety, defense, and recovery of the boat, without *78 prejudice to the assurance; and stipulates to contribute to the charges thereof in proportion as the sum insured is to the whole sum at risk. Whatever of force there may be in that objection, in a proper case, therefore, it has no application to this case. Noi are we able to discern either the justice or the legal obligation of the claim to separate into moieties the items objected to, before we determine the liability of the defendants. They stipulate that if the whole loss is ten per cent, or six hundred dollars, they will pay one-half of it. They do not contract, that if one-half the loss shall amount to ten per cent, they will pay the whole of it; if they did, there would be some force in the argument. The case at bar is not within the rule laid down in Stephens on Average, pt. 4, art. 3, p. 211, “ that if several articles be insured together, free of average, under five per cent., and average be claimed upon the whole, the claim should be analyzed to find if each be damaged five per cent.; and unless the average on each of them, separately, amount to five per cent., the claim must be substantiated as only ■ one of them.” Here is no insurance of several articles together ; the policy is confined to one, the boat.
The counsel for the defendants have argued at length a motion for a new trial in this case, predicated upon a supposed error of the court in its direction to the jury; and amotion for a new trial is certified by them as found among their papers, which was prepared by them before the special verdict was reduced to form. The record shows that the only question reserved for decision here, was the “ motion for judgment on the special verdict.” 76] *In this state of things, the counsel for the plaintiff object to the consideration of the motion for a new trial, because it is not. properly before the court. The first section of the act to establish a court in bank, 29 Ohio L. 93, makes it our duty “ to hold a court in bank, for the final adjudication of all such questions of law as may have been reserved in any county for decision." It is questionable whether, as a court in bank, we have authority to entertain original motions of this kind; but however that may be, it has not been our practice to consider motions not submitted in the county and reserved for decision; and we see nothing in this case to require a change of practice. The arguments for a new trial, therefore, have not been examined.
Deducting from the verdict one-half of the item of three hundred and ninety-eight dollars, with the interest thereon, the boat’s *79 contribution for the wages of the crew while on the rocks, which we think not chargeable on the assurer, the plaintiff is entitled to judgment for the remainder of the damages assessed by the jiiry, viz: one thousand and sixty-two dollars and sixty-seven cents, with costs.